UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

C.F., by his parents R.F. and G.F.,

        Plaintiffs,

     -v-                                 No.  11 Civ. 00157 (LTS)

The NEW YORK CITY DEPARTMENT
OF EDUCATION,

        Defendant.

-------------------------------------------------------x

## OPINION AND ORDER

        Plaintiffs R.F. and G.F., on behalf of their minor son, C.F. (collectively

"Plaintiffs"), bring this action against the New York City Department of Education ("Defendant"

or "DOE"), pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et

seq., as amended (the "IDEA" or the "Act"), seeking review of a decision denying their request

for reimbursement of expenses incurred in connection with the placement of C.F. at the

McCarton School ("McCarton").  Plaintiffs first sought reimbursement for their unilateral

placement of C.F. at McCarton, a private school for students with autism, by filing a due process

complaint with the DOE.  On June 14, 2010, the Impartial Hearing Officer ("IHO") who

conducted the due process hearing found that the DOE had failed to provide C.F. with a free and

appropriate public education ("FAPE") and that C.F.'s placement at McCarton was proper.  The

IHO ordered the DOE to reimburse Plaintiffs for the 2008-2009 school year.  The DOE timely

appealed the IHO's decision and, on September 8, 2010, the State Review Officer ("SRO")

reversed the IHO's decision, finding that the DOE had offered C.F. a FAPE.  Plaintiffs were

therefore denied reimbursement for the 2008-2009 school year.

Plaintiffs now seek review and reversal of the SRO's decision, as well as reasonable attorney's fees. See 20 U.S.C.A. 1415(i)(2)(A)-(C), (i)(3)(B) (West 2010). Defendant moves for summary judgment dismissing Plaintiffs' complaint. The principal issues are whether the DOE provided a FAPE to C.F., whether McCarton was an appropriate placement for C.F., and whether the equities favor reimbursement. The Court has jurisdiction of this action pursuant to 20 U.S.C. § 1415(i)(2) and 28 U.S.C. § 1331.

The Court has reviewed carefully the administrative record in this case. For the reasons set forth below, Defendant's motion for summary judgment is granted, and Plaintiffs' complaint is dismissed.

## I.   STATUTORY AND PROCEDURAL FRAMEWORK

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living . . . [and] that the rights of children with disabilities and parents of such children are protected." 20 U.S.C.A. § 1400(d)(1)(A)-(B) (West 2010). States receiving federal funds must make a FAPE available to all children with disabilities living in the state. Forest Grove Sch. Dist. v. T.A., — U.S. —, —, 129 S. Ct. 2484, 2487 (2009). Each child with a disability must be evaluated by the local or state educational authority in order to develop a written "individualized education program" ("IEP") including special education and related services. 20 U.S.C.A § 1414(d) (West 2010). Either the child's parent or the educational authority may commence the evaluation but parental consent is required. 20 U.S.C.A § 1414(a)(1) (West 2010). Further, the evaluation is subject to statutory procedural and temporal

requirements.  Id.

       In New York, IEPs are developed by "Committees on Special Education" ("CSEs"), comprised of various teachers and therapists from the relevant educational authority and the child's current placement, as well as the child's parents.  20 U.S.C.A. § 1414(d)(1)(B) (West 2010); N.Y. Educ. L. § 4402(1)(b)(1)(a) (McKinney 2010).  If the parents disagree with the CSE's proposed placement and IEP, they may file a due process complaint specifying the grounds of their disagreement.  20 U.S.C.A. § 1415(b)(6)(A) (West 2010).  The parents may also place their child in a private school unilaterally at their own risk, and seek tuition reimbursement retroactively from the relevant educational authority.  20 U.S.C.A. § 1412(a)(10)(C) (West 2010).

       The IDEA provides that the parents' grievances must be pursued through an "impartial due process hearing" before an IHO.  20 U.S.C.A § 1415(f)(1)(A) (West 2010); N.Y. Educ. L. § 4404(1)(a) (McKinney 2010).  The IHO's decision may be appealed to an SRO by either party.  20 U.S.C.A. § 1415(g)(1) (West 2010).  The SRO independently reviews the findings of the IHO and is empowered to modify "any determination of the [IHO] relating to the . . . selection of an appropriate special education program or service and the failure to provide such program."  20 U.S.C.A. § 1415(g)(2) (West 2010); N.Y. Educ. L. § 4404(2) (McKinney 2010).  Either party may challenge the SRO's final decision in federal district court.  20 U.S.C.A. § 1415(i)(2)(A) (West 2010).  Based on "the preponderance of the evidence before it," the court is empowered to "grant such relief as the court determines is appropriate."  20 U.S.C.A. § 1415(i)(2)(C)(iii) (West 2010); Forest Grove Sch. Dist., 129 S. Ct. at 2491 (The reviewing court has "the power to order school authorities to reimburse parents for their expenditures on private special-education services.")

## II.   BACKGROUND

The following background summary is taken from the administrative record and includes the relevant undisputed facts.  C.F. is nine years old.  He is characterized as mild to moderately autistic on the Childhood Autism Rating Scale.  (Tr. at 89.)[1]  He was four years old when he began attending McCarton in September of 2006.  (Tr. at 657-658.)  He was six years old at the beginning of the 2008-2009 school year.  (Defendant's Local Rule 56.1 Statement, ¶ 1.)

A.   CSE Evaluation and Final Notice of Recommendation

In February of 2008, Plaintiffs contacted the DOE and requested that C.F. be evaluated for special education services.  The CSE scheduled C.F. for a social history and psychological evaluation on March 8, 2008.  On May 15, 2008, the CSE met to design C.F.'s IEP.  The Committee was comprised of Nicole Check (a DOE psychologist), R.F., Ivy Feldman (McCarton's Director of Education), Adima Haims (C.F.'s Speech Therapist), Judith Ojukwu (C.F.'s Applied Behavior Analysis ("ABA") Therapist), Isabel Fernandez (a DOE social worker), Rosemary Richardson (a DOE Special Education teacher), and Gloria Gonsalves (a parent of a disabled child).  (Tr. at 65-66.)

The CSE considered a classroom observation report, a social history report prepared by a DOE social worker and a neuro-developmental evaluation, as well educational, occupational therapy ("OT") and speech and language progress reports.  (Tr. at 69.)  The reports were prepared by C.F.'s teachers at McCarton.

After reviewing the records and taking questions from the various participants,

---

[1]   "Tr." refers to the transcript of the IHO Hearings conducted on September 26, 2008, January 23, April 1, April 3, April 15, June 4 and November 24, 2009.

the CSE classified C.F. as autistic and recommended that he be placed in a 6:1:1 (six students to one teacher and one paraprofessional) classroom with the related services of speech and language therapy five times a week and occupational therapy five times a week. (IHO Hr'g Ex. 1[2]; Tr. at 80-81.) The specific placement site was determined later, at a DOE placement meeting. Following the CSE meeting, Mrs. Check (the DOE psychologist) drafted a behavior intervention plan ("BIP") for C.F. that listed his interfering behaviors as described in the McCarton reports and possible means of addressing those behaviors. (Tr. at 123-124.) The DOE did not conduct a Functional Behavior Assessment ("FBA") prior to drafting the plan. Mrs. Check testified that she was able to develop the BIP based on the McCarton reports, making an FBA unnecessary. (Tr. at 82-88.) The CSE did not explicitly mention parent training and counseling in the IEP. (Tr. at 97.)

The DOE sent a Final Notice of Recommendation ("FNR") to Plaintiffs on June 17, 2008. (IHO Hr'g Ex. 2.) The FNR placed C.F. at P.S. 169 at P.S. 102. (Id.) P.S. 169 is a District 75 school with multiple sites. (Def's. 56.1 Statement, ¶ 22 n. 2.) In July 2008 it was located at P.S. 155 but the P.S. 102 location would have been open in September. (Tr. at 309-310.) R.F. attempted to contact the school by phone to arrange a visit but received no response. (Tr. at 792.) On June 24, 2008, R.F. wrote a letter to the DOE contact person, attempting to arrange an appointment to visit the school. (Tr. at 794.) On June 27, 2008, R.F. sent another letter to the DOE, stating that because of the "short time frame" before the beginning of the school year he would not have time to visit and would instead seek reimbursement for C.F.'s continued attendance at McCarton. (IHO Hr'g Ex. D.)

---

[2]     Numbered exhibits were entered into the record of the IHO Hearing by Defendant; Plaintiffs entered exhibits designated by letters.

B.      IHO Hearing and Decision

On June 30, 2008, Plaintiffs filed a due process complaint contesting several aspects of the IEP.  (IHO Hr'g Ex. A, pg. 2-3.)  Specifically, Plaintiffs argued that the CSE and IEP process had been marred by several procedural and substantive flaws, including the lack of a specific site in the IEP, the lack of parent training, the absence of a general education teacher at the CSE meeting, the failure to conduct an FBA and design an appropriate BIP, and ambiguous short-term goals.  (Id. at pg. 2-3.)  Plaintiffs sought tuition reimbursement for their placement of C.F. at McCarton for the 2008-2009 school year and for part of the 2007-2008 school year.  (Id. at pg. 3.)  The IHO Hearing commenced on September 26, 2008.  The hearing adjourned and met six more times, ending on November 24, 2009.

Mrs. Check testified for the DOE at the hearing.  She testified that C.F. presented with several self-stimulatory and maladaptive behaviors, including dropping to the floor and non-contextual and inappropriate words and sounds.  (Tr. at 83.)  While such behaviors would ordinarily call for an FBA, Ms. Check asserted that, because the CSE had reports from C.F.'s current teachers at McCarton, there was no need to conduct an FBA.  The McCarton reports provided background and antecedent information regarding C.F.'s behaviors, information which was further augmented by a classroom evaluation conducted by a DOE social worker and discussions at the CSE meeting.  (Tr. at 81-82.)  Using that information, Ms. Check was able to devise several strategies to address and correct these behaviors as indicated on the BIP, including "planned ignoring," differential reinforcement and varied task difficulty.  (Tr. at 83-88.)  While she admitted that an FBA would have provided information about the function of C.F.'s behaviors and that the BIP was vague (Tr. at 130), she asserted that, once C.F. was at his placement, his teachers would have further refined the BIP based on C.F.'s behavior in class.

(Tr. at 129.)  Regarding parent training and counseling, Ms. Check testified that those services were integrated into the placement as a matter of course, which is why there was no mention of training in the IEP.  (Tr. at 97.)

The IHO heard testimony from Denise Velazquez, the Parent Coordinator at P.S. 169, regarding the services she provides to parents.  Ms. Velazquez testified that, as a liaison to the school's parents, she coordinates services from outside agencies, and advises parents as to different aspects of their children's programs.  (Tr. at 251-52; 257-58.)  She also conducts approximately eight or nine workshops during the school year for parents of autistic children. (Tr. at 254-55.)  These workshops address various ways in which parents help their children further develop outside of school, including but not limited to creating play schedules, behavioral intervention strategies, and access to respite and Medicaid services.  (Tr. at 256.)  Ms. Velazquez also described a wide variety of at-home services coordinated through her office and available to parents of autistic children.  (Tr. at 258-261.)  Ms. Velazquez stated that she made parents aware of these services through a bimonthly newsletter, personal contact with new parents, and telephone communication.  (Tr. at 268.)

Irene Halpern, Assistant Principal of P.S. 169, testified regarding the multiple sites of P.S. 169.  She testified that there would have been a placement available for C.F. in July 2008 where he could have received all of his related services.  (Tr. at 309-310.)  The P.S. 102 site that would have opened in September 2008 was only four blocks away.  (Tr. at 310.)  Had C.F. attended the P.S. 155 site in July and his parents wanted him to stay there rather than change sites, he could have done so.  (Tr. at 315.)  Further, the two sites were substantially identical in terms of facilities and staff.  (Tr. at 314.)  The only difference was that the P.S. 102 site was at the time a brand new building and the students there were exclusively in

Kindergarten. (Tr. at 315.)

Stephanie Silverman, a special education teacher at P.S. 169, testified regarding

the implementation of the BIP element of the IEP. Ms. Silverman explained various ways in

which she addressed problem behaviors in her classroom. (Tr. at 429-431.) In C.F.'s case, she

stated by way of an example that she would address his out of context sounds and inappropriate

volume levels with a timer. (Tr. at 432.) If he had been able to speak quietly for the length of

time required, Ms. Silverman would have given him a reinforcer as provided for in the BIP. (Tr.

at 433; IHO Hr'g Ex. 1, 1-17.) She testified further that she would have observed C.F. for

several weeks and conducted her own FBA in order to further refine the BIP towards C.F.'s

observed behaviors. (Tr. at 434.) Ms. Silverman is experienced in designing BIPs and testified

that she would have been able to develop one for C.F. once he was in her classroom. (Tr. at 433-

34.)

The IHO rendered a decision on June 14, 2010, finding that the DOE had failed to

offer C.F. a FAPE. (IHO Dec. at 14.)[3] Specifically, the IHO found that, in a 6:1:1 classroom,

C.F. would not be properly supervised; that the DOE should not have provided a site that would

not be ready at the beginning of the school year; that the IEP was insufficient to meet the

statutory FAPE requirements because it lacked an FBA and included only a vague BIP; that it

was not enough to assume that parent training and counseling would be integrated into C.F.'s

placement if they were not specifically mentioned in the IEP; that C.F. was making meaningful

progress at McCarton, a placement reasonably calculated to provide educational benefits to him;

and that the equities favored reimbursing Plaintiffs for the 2008-2009 school year. (Id. at 14-15,

---

[3]     "IHO Dec." refers to the June 14, 2010, decision of Impartial Hearing Officer Nancy
M. Lederman.

17-19.)  The IHO denied Plaintiff's claim for reimbursement for a portion of the 2007-2008

school year, finding that the claim for such reimbursement had not been asserted in a timely

fashion.  (Id. at 16-17.)  Accordingly, the IHO ordered Defendant to reimburse Plaintiffs for the

cost of C.F.'s McCarton tuition for the 2008-2009 school year.  (Id. at 19.)

C.      SRO Appeal and Decision

Defendant timely appealed the IHO's ruling.  Plaintiffs filed an answer to the

DOE's review petition but did not cross-appeal any of the IHO's rulings.  (SRO Dec. at 11-12.)[4]

The SRO determined that issues not raised in the DOE's appeal and not cross-appealed by

plaintiffs – such as the denial of reimbursement for the 2007-2008 school year – were foreclosed

from further review.  (Id.)  The SRO rendered his decision on September 8, 2010.

As to Plaintiffs' procedural complaints, the SRO found that, while no FBA had

been performed prior to development of the IEP, the BIP component of the IEP as written was

sufficient because it addressed C.F.'s interfering behaviors and it would have been refined

further at the placement.  (Id. at 12-13.)  The SRO rejected Plaintiff's argument that the IEP's

failure to address parent training and counseling denied C.F. a FAPE, finding that parent training

integrated into the placement fulfilled the relevant state regulatory and federal statutory

requirements even if it was not specifically addressed in the IEP.  (Id. at 14-15.)  Additionally,

the SRO found that the IHO should never have addressed the site availability issue, as it had not

been raised in Plaintiffs' due process complaint and therefore was not properly before the IHO.

(Id. at 12.)

The SRO held that Defendant had offered C.F. a FAPE and that a 6:1:1 classroom

---

[4]      "SRO Dec." refers to the September 8, 2010, decision of State Review Officer Paul
F. Kelly.

was appropriate, and concluded that Plaintiffs were not entitled to tuition reimbursement, reversing the IHO's decision. (Id. at 15-18.)  Because he found that Defendant had provided C.F. with a FAPE, the SRO did not reach the issues of McCarton's appropriateness or whether the equities favored reimbursement. (Id.)

       Plaintiffs filed a timely complaint in this Court and moved for a review of the SRO's decision, as authorized by 20 U.S.C § 1415(i)(2)(A) and N.Y. Educ. L. § 4404(3)(a). Defendant moved for summary judgment in response.

### III.    DISCUSSION

**A.**    <u>Standard of Review</u>

       In a civil action brought for review of administrative findings under the IDEA, the court receives the record of the administrative proceedings, hears additional evidence at the parties' request, and grants such relief as the court deems appropriate based on the preponderance of the evidence.  20 U.S.C.A. § 1415(i)(2) (West 2010).  Summary judgment is merely the "pragmatic procedural mechanism" for what is, substantively, an appeal from an administrative decision. <u>Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.</u>, 397 F.3d 77, 83 n. 3 (2d Cir. 2005).  Disputed factual issues will not necessarily defeat a motion for summary judgment in an IDEA case. <u>Viola v. Arlington Cent. School Dist.</u>, 414 F. Supp. 2d 366, 377 (S.D.N.Y. 2006).

       The court conducts an independent review of the administrative record. <u>Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 205 (1985).  The court need not give deference to administrative decisions on issues of law, and reviews such matters de novo. <u>Mrs. B v. Milford Bd. Of Educ</u>, 103 F.3d 1114, 1122 (2d Cir. 1997).  However, when reviewing administrative decisions on educational policy, courts may not simply substitute their

own judgment, as the "judiciary generally lacks the specialized knowledge and experience necessary to resolve . . . questions of educational policy." T.Y. & K.Y. ex rel. T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009)).  The court must give due weight to the administrative determinations where they concern the suitability of educational programs. Id. (citing A.C. ex rel. M.C. v. Bd. of Educ., 553 F.3d 165, 171 (2d Cir. 2009).  Where the court's decision is based solely on the administrative record, as it is here, such deference is "particularly warranted," especially where the SRO's review was "thorough and careful." Id.  Where the SRO and IHO disagree, the IHO's decision may be given "diminished weight." See A.C. ex rel. M.C., 553 F.3d at 171.  The Court defers to "'the final decision of the state authorities,' even where 'the reviewing authority disagrees with the hearing officer.'" Id. (quoting Karl ex rel. Karl v. Bd. of Educ. of Geneseo Cent. Sch. Dist., 736 F.2d 873, 877 (2d Cir. 1984)).  "Because administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when assessing an IEP's substantive adequacy." Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 195 (2d Cir. 2005).

B.     The Burlington/Carter Test

         The Supreme Court has established a three pronged framework, commonly referred to as the "Burlington/Carter test," for applications for private school tuition reimbursement under the IDEA.  The relevant educational authority may be required to reimburse the parents of a disabled child for tuition and other expenses related to a private school placement when (1) the IEP and placement offered by the educational authority were inadequate or inappropriate (in other words, where the educational authority failed to offer a FAPE) (2) the parents' private placement was appropriate for their child's needs, and (3) the balance of the equities favors reimbursement.  See Florence County Sch. Dist. Four v. Carter,

510 U.S. 7, 16 (1993); Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-370

(1985). In New York, the educational authority bears the burden of proving that its IEP and

recommended placement were adequate and appropriate; if the educational authority makes the

requisite showing, the burden then shifts and the parents must show that their unilateral

placement was appropriate. N.Y. Educ. L. § 4404(1)(c) (McKinney 2010). If the parents satisfy

their burden, the educational authority must show that the equities disfavor tuition

reimbursement. See id.

1.    Did DOE Offer C.F. a FAPE?

        When evaluating the adequacy and propriety of an IEP, the reviewing court must

address two questions: (1) whether the educational authority complied with the IDEA's

procedural requirements, and (2) whether the IEP was "reasonably calculated to enable the child

to receive educational benefits." Cerra, 427 F.3d at 192. To be adequate and appropriate, the

IEP must conform to the statutory content requirements. See K.Y. ex rel. T.Y. v. New York City

Dep't of Educ., No. 07-CV-3199 (SJ), 2008 U.S. Dist. LEXIS 89827 (E.D.N.Y. July 2, 2008),

aff'd, 584 F.3d 412 (2d Cir. 2009) (citing 20 U.S.C.A § 1414(d)(1)(a); 8 N.Y.C.R.R. §

200.4(d)(2)). Compliance with the procedural safeguards of the IDEA is vital to fulfilling the

purpose of the Act. Rowley, 458 U.S. at 205 ("[A]dequate compliance with the procedures

prescribed would in most cases assure much if not all of what Congress wished in the way of

substantive content in an IEP"). However, not every procedural error in the IEP renders it

"legally inadequate under the IDEA." A.C. ex rel. M.C., 553 F.3d at 172. Procedural violations

result in a denial of a FAPE only where the deficiencies "(I) impeded the child's right to a free

appropriate public education; (II) significantly impeded the parents' opportunity to participate in

the decision making process regarding the provision of a free appropriate public education to the

parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C.A. §

1415(f)(3)(E)(ii) (West 2010); 34 C.F.R. § 300.513(a)(2) (2010).   Here, the SRO rejected

Plaintiffs' contentions that procedural violations had resulted in the denial of a FAPE.   (SRO

Dec. at 15-18).

      As a threshold matter, Plaintiffs argue that deference to the SRO's conclusions

regarding the substantive adequacy of the IEP is unwarranted because the SRO inappropriately

relied on "retrospective" IHO Hearing testimony regarding the services that would have been

offered at the placement DOE had designated for C.F., and ignored the IHO's credibility

assessments and findings of fact.   See Pls' Mem. of Law, pg. 3.   The Second Circuit has,

however, itself deferred to administrative determinations that took into account hearing

testimony that post-dated the parents' rejection of an IEP.   See T.Y., 584 F.3d at 419 (hearing

testimony indicated that 1:1 crisis intervention aide provided actual benefit in addressing

problem behaviors; court defers to administrative determination that failure to provide FBA or

BIP did not deny FAPE); see also W.T. v. Bd. of Educ. of the Sch. Dist. of New York City, 716

F. Supp. 2d 270, 289 (S.D.N.Y. 2010) (testimony as to periodic evaluation of goals at the

placement sufficient to find that the Board offered a FAPE even where measurement of goals

was not part of the IEP).[5]   It was therefore proper for the SRO to rely on the witness testimony

cited in his decision.

      Furthermore, Plaintiffs do not point to any specific instances where the SRO

ignored the IHO's credibility determinations or findings of fact.   The fact that the IHO and SRO

---

[5]    But see R.E. v. New York City Dep't of Educ., 785 F. Supp. 2d 28, 42 (S.D.N.Y. 2011), appeal pending; R.K. v. New York City Dep't of Educ., No. 09-CV-4478 (KAM), 2011 WL 1131492 (E.D.N.Y. Jan. 21, 2011), adopted by, No. 09-CV-4478 (KAM)(RLM) 2011 WL 1131522 (E.D.N.Y. Mar. 28, 2011), appeal pending.

reviewed the same testimony and drew differing legal conclusions does not mean that the SRO

improperly ignored the IHO's determinations, or that the SRO's review was not thorough and

careful. R.R. v. Scarsdale Union Free School Dist., 366 F. App'x 239, 242 (2d Cir. 2010)

(rejecting the argument that the SRO ignored the IHO's findings where, as here, the record did

not reveal any instance where the SRO did so, nor did appellants point to one).  Accordingly, the

Court will give appropriate deference to the SRO's decision.  See Karl, 736 F.2d at 877 (stating

that the courts must defer to the final administrative decision in IDEA cases).

      a.     Matters Raised in Original Due Process Complaint

Plaintiffs argue that the IEP was deficient because it failed to specify the school

in which C.F. would be placed (before the IHO and on this appeal, Plaintiffs also argue that the

location the DOE ultimately specified was not actually available as of the time instruction was

scheduled to begin, although the availability issue was not raised in the original due process

complaint).  Plaintiffs further contend that the BIP element of the IEP was deficient because no

FBA had been performed, and because the BIP was insufficiently specific.  The absence of any

parent training and counseling in the IEP is also cited as a fatal deficiency.  Except as noted, all

of these issues were raised in Plaintiff's original due process complaint.

      i.     Site Specification and Availability

The IDEA provides that the relevant educational authority must include and

involve the parents of each disabled child in the development of that child's "educational

placement."  20 U.S.C.A. § 1414(e) (West 2010); 34 C.F.R. § 300.501(a)(1) (2010).  In T.Y., the

Second Circuit held that the term "placement" refers not to the "bricks and mortar" of a specific

location but to the "general type of educational program in which the child is placed."  T.Y., 584

F.3d at 419 (internal citations omitted).  The IDEA does not grant parents "veto" power over

school choice; parental rights to participate in the IEP development process do not extend to the determination of which specific school their child will attend. Id. at 420. Accordingly, "an IEP's failure to identify a specific school location will not constitute a per se procedural violation of the IDEA." Id.

Plaintiffs' argument that the DOE's failure to specify in the IEP the school to which C.F. would be assigned violated the IDEA therefore fails. It did not constitute a per se procedural violation, nor is there any basis in the record for concluding that Plaintiffs were prejudiced in any material respect by the lack of specificity. Plaintiff's contention of FAPE denial based on the fact that the location ultimately specified would not have been available during the summer of 2008 and that another location would have been offered as a temporary or permanent placement is also unavailing. As noted above, the IDEA does not give parents the right to participate in the choice of the specific placement location. T.Y., 583 F.3d at 420; A.S. v. New York City Dep't of Educ., No. 10-CV-9, slip op. at 18-19 (ARR) (RLM) (E.D.N.Y. May 25, 2011), appeal pending (no deprivation where FNR indicated a classroom across the street from the actual placement location). Furthermore, Plaintiffs' failure to raise this issue in their due process complaint rendered improper the IHO's consideration of the actual availability of the placement.

      ii.     Absence of FBA

Plaintiffs argue that the IEP was inadequate and insufficient because, although it did include a BIP, no FBA had been conducted prior to the formulation of that BIP. When a child displays behaviors that impede his or her learning or the learning of other students, the IDEA requires that the CSE consider strategies and supports to address that behavior. 20 U.S.C.A. § 1414(d)(3)(B)(i) (West 2010); 34 C.F.R. § 300.324(a)(2)(i) (2010). Additionally,

New York regulations require that the CSE conduct an FBA in order to determine why the child displays interfering behaviors. 8 N.Y.C.R.R. § 200.4(b)(1)(v) (2010). The FBA is intended to be the basis of the BIP. 8 N.Y.C.R.R. § 200.1(mmm) (2010). However, where the BIP documents a child's interfering behaviors and proposes strategies and supports to address those behaviors, the failure to also conduct an FBA does not amount to a denial of a FAPE. See A.C. ex rel. M.C., 553 F.3d at 172 ("The IEP noted M.C.'s attention problems and the need for a personal aide and prompting to maintain M.C.'s focus during class. [The School District's] experts testified that these strategies had proven effective."). The A.C. Court further noted that the sufficiency of a district's behavioral intervention strategy is "precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." Id.

At the IHO Hearing, Mrs. Check testified that the CSE did not perform an FBA prior to formulating the draft IEP because the CSE felt that it could rely on the McCarton reports. (Tr. at 81-82.) The reports upon which the CSE relied had been drafted by C.F.'s teachers and not only documented his interfering behaviors but also the reasons behind those behaviors. For example, in C.F.'s educational progress report, Ms. Ojukwu wrote that "screaming [and] dropping to the floor," two of the behaviors listed in the BIP, were caused by C.F.'s "low frustration-tolerance." (IHO Hr'g Ex. 10, pg. 1.) The report further posited that the severity of C.F.'s interfering behaviors was influenced by "the degree of structure of the situation" and that C.F. tended to regress when he spent time away from the structure of the school environment. (IHO Hr'g Ex. 10, pg. 1-2.) Ms. Ojukwu also described how the staff at McCarton addressed C.F.'s behaviors with "positive reinforcement, redirection . . .[and a] skill based behavior modification program." (IHO Hr'g Ex. 10, pg. 2.) The other McCarton reports contain similar observations, although not all of them suggest antecedents and solutions in as

much detail. (IHO Hr'g Ex. 11, pg. 1 ("[C.F.] continues to exhibit frequent self-stimulating behaviors..."); IHO Hr'g Ex. 9, pg. 5 ("[C.F.] most often seems completely over stimulated, expressed in the form of yelling, falling to the ground, and laughing uncontrollably.")) In addition to these reports, two of the evaluators were present at the CSE meeting to provide more current information if necessary. While an FBA should not rely solely on a child's past behavioral history, 8 N.Y.C.R.R. § 200.22(a) (2010), here the CSE had access to C.F.'s current teachers as well as reasonably up-to-date records of his current behaviors. Mrs. Check did acknowledge that the BIP as drafted was vague, but testified that it would have been further refined once C.F. was attending his placement. (Tr. 129-30.) Ms. Silverman confirmed that she would have adapted C.F.'s BIP according to his observed behavior once he was in her class. (Tr. at 429-434.)

  The IDEA requires only that the CSE "consider the use of positive behavioral interventions and supports, and other strategies, to address [interfering] behavior." 20 U.S.C.A. § 1414(d)(3)(B)(I) (West 2010); see also J.A. v. East Ramapo Sch. Dist., 603 F. Supp. 2d 684, 689 (S.D.N.Y. 2009) (holding that the IDEA does not require an FBA). In T.Y., the DOE had not performed an FBA or designed a BIP. T.Y., 584 F.3d at 418. Instead, the IEP called for a 1:1 aide who would document and address T.Y.'s interfering behaviors, in the same way that a classroom teacher would do if the teacher were working from a BIP. Id. at 419. The Second Circuit held that the DOE had satisfied its statutory burden by providing for a 1:1 aide, despite the lack of an FBA and BIP. T.Y., 584 F.3d at 419 ("While the parents argue that a crisis paraprofessional is no substitute for an FBA or a BIP, there is substantial evidence in the record that the 1:1 aide provided significant benefits to T.Y. in addressing the [interfering] behaviors").

  Here, the CSE had access to a substantial amount of information on C.F.'s current

interfering behaviors and did draft a BIP, which reflected the behaviors and provided for the continued use of intervention strategies described in the McCarton reports. Indeed, the IEP indicated that C.F.'s "[b]ehavior requires highly intensive supervision." (IHO Hr'g Ex. 1 at 5.) Based on this record and for the further reasons explained in the SRO's thorough report, Defendant's failure to perform an FBA as part of the process of formulation of the BIP did not deny C.F. a FAPE.

        iii.    <u>Absence of Explicit Provision for Parent Training and Counseling</u>

        The IEP prepared for C.F. provided for placement in a "special class in a specialized school with related services," but made no reference to parental training and counseling. (IHO Hr'g Ex. 1) Plaintiffs argue that the omission rendered the IEP procedurally defective and substantively inadequate.

        New York requires that school districts offer parent training and counseling for children with autism. 8 N.Y.C.R.R § 200.13(d) (2010). Parent training and counseling is defined as "assisting parents in understanding the special needs of their child; providing parents with information about child development; and helping parents to acquire the necessary skills that will allow them to support the implementation of their child's individualized education program." 8 N.Y.C.R.R. § 200.1(kk) (2010). At the IHO Hearing, Ms. Velazquez offered extensive testimony as to the training, counseling and other services that would have been available to Plaintiffs had C.F. attended his placement. Ms. Velazquez testified that P.S. 169 offers home services, workshops, coordination with outside agencies and individual communication with parents about their child's education program. (SRO Dec. at 14-15.) The SRO found that the provision of these services satisfied New York's requirements, and that the failure to specify the services on the IEP "did not[,] procedurally or substantively, result in the

denial of a FAPE to [C.F.]."  Id. at 15; see also M.N. v. New York City Dep't of Educ.,700 F.

Supp. 2d 356, 368 (S.D.N.Y. 2010).

       Plaintiffs argue that Defendant should not be able to rely on "retrospective

testimony at the [IHO] hearing as to what C.F. allegedly 'would have' received despite what the

IEP says."  See Pls' Mem. of Law, pg. 3.  As far as Plaintiffs were concerned when they decided

to place C.F. at McCarton, Defendant's proposed placement did not offer them any training or

counseling.  See id. at pg. 14 ("There simply was no provision in the IEP for parent training and

counseling.").  The Court recognizes the potential inequity of allowing an educational authority

to rely, in meeting its burden of demonstrating that it offered a FAPE, on information that was

not given to parents before they made their decision to reject the District's IEP.  The district

courts in this Circuit have reached differing conclusions regarding the propriety and effect of

considering such information.  Compare W.T. 716 F. Supp. 2d at 289 (testimony as to periodic

evaluation of goals at the placement sufficient to find that the Board offered a FAPE even where

measurement of goals was not part of the IEP) and M.N., 700 F. Supp. 2d at 368 (provision for

parent training in the IEP unnecessary where such training was integrated at the placement) with

R.E., 785 F. Supp. 2d at 42 ("The SRO's reliance upon the teacher's testimony to remedy the

deficits found by the IHO in the IEP was unwarranted.") and R.K., No. 09-CV-4478 (KAM),

2011 WL 1131492, *20 ("The adequacy of the DOE's proposed placement should be measured

against what the DOE actually offered R.K. at that time, not on the basis of information disclosed

the following year, at the IHO hearing, as to what that placement might gratuitously have

included.")  As noted above, the Second Circuit in T.Y. approved the consideration of

information developed after the rejection of the IEP in determining that deference to the

administrative decisionmaker's determination that the IEP was not substantively deficient was

appropriate.  T.Y., 584 F.3d at 419.

   Here, while the failure to specify parent training and counseling as a related

service was a procedural defect, 8 N.Y.C.R.R. § 200.4(d)(2)(v)(b)(5) (2010), the IEP did specify

a "specialized school" setting.  Testimony as to what that setting entailed was properly

considered under these circumstances.  Given the nature of the omission and the SRO's detailed

and thoughtful analysis of the substantial record concerning the parent services available in the

setting, the Court finds no reason to reject the SRO's determination that the omission did not

effect a procedural or substantive denial of a FAPE.

   b.  Plaintiffs' Additional Claims

     i.  Issues Raised for the First Time in this Proceeding

   In this proceeding, Plaintiffs argue for the first time that C.F. was deprived of a

FAPE because: the parental training and counseling DOE would have offered, as described in

the IHO Hearing testimony, was offered in group, rather than private settings; the CSE meeting

was convened after the relevant statutory deadline; the IEP did not provide for a behavior

management paraprofessional; and the IEP lacked a formal plan for C.F.'s transition from the

private school to the public school setting.  None of these issues was raised in Plaintiffs' due

process complaint or argued in the administrative proceedings below.

   The IDEA and the federal and state regulations require that the party requesting

the hearing lay out specifically in the due process complaint the issues that will be before the

hearing officer.  See e.g., 20 U.S.C.A. § 1415(f)(3)(B) (West 2010); R.B. ex rel. A.B. v. Dep't of

Educ. of the City of New York, No. 10-CV-6684(RJS), 2011 WL 4375694, *6-*7 (S.D.N.Y.

Sep. 16, 2011) (citing E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist., 361 F. App'x 156,

158 (2d Cir.2009)).  The party who requests an impartial hearing is restricted to the issues raised

in their due process complaint, unless the complaint is amended prior to the hearing or the other party consents.  20 U.S.C.A § 1415(c)(2)(E), (f)(3)(B) (West 2010); 34 C.F.R § 300.511(d) (2010); 8 N.Y.C.R.R. § 200.5(j)(1)(ii) (2010).  Because the new issues were not addressed in the administrative proceedings, the Court will not consider them.  See A.D. v. Bd. of Educ. of the City Sch. Dist. of the City of New York, 690 F. Supp. 2d 193, 214 n.16 (S.D.N.Y. 2010) (arguments not raised during the administrative proceedings are waived); see also Bruschini v. Bd. of Educ., 911 F. Supp. 104, 107-08 (S.D.N.Y. 1995) ("The failure to present claims of procedural errors in connection with approval of . . . [an IEP] at the administrative hearings bars such claims from being heard by the district court.")

        ii.     Staffing Ratio at the Proposed Placement

Plaintiffs argue that the 6:1:1 classroom student to staff ratio that was specified in the IEP would not have provided a sufficient level of supervision and that C.F. required 1:1 support at all times.  Plaintiffs failed to raise this issue in their due process complaint, and the DOE objected to consideration of the issue in the proceedings before the IHO and on appeal to the SRO.  The IHO and the SRO nonetheless addressed the issue.  For the reasons explained above, Plaintiffs' failure to raise this issue in their due process complaint foreclosed its proper consideration.  In any event, the SRO's thoughtful, detailed and reasoned disposition of the issue in the DOE's favor merits deference as to this question of educational policy.  Cerra, 427 F.3d at 195.

        iii.    Articulation of IEP Goals

The DOE did not address the short term goal issue in its appeal and, as noted above, Plaintiffs did not cross-appeal.  The IHO declined to address that issue.  (SRO Dec. at 11.)  Any aspects of the IHO's decision that were not appealed to the SRO are now final and

binding on the parties.  34 C.F.R. § 300.514(a) (2010); 8 N.Y.C.R.R. § 200.5(j)(5)(v) (2010).

Accordingly, the administrative treatment of Plaintiffs' complaints about the IEP's short term

goals, as well as of the other claims that were not appealed to the SRO, is binding on the parties

and the issue is not properly before the Court.  (SRO Dec. at 11-12.)

2.      Other Burlington/Carter Factors

              As explained above, Defendant provided C.F. with a FAPE.  Accordingly, the

Court need not decide whether McCarton was a suitable placement or whether the equities favor

reimbursement.

C.      C.F.'s Pendency Reimbursement Claim.

              In their due process complaint and again in the briefing for this motion, Plaintiffs

assert that they are entitled, based on statutory provisions concerning "pendency" placements, to

reimbursement for the cost of McCarton tuition during the period in which the administrative

proceedings were pending.  See Pls' Reply Mem. of Law, pg. 1 n.2.  The IDEA provides that,

during the pendency of administrative proceedings, "the child shall remain in the then-current

educational placement of the child, or, if applying for initial admission to a public school, shall,

with the consent of the parents, be placed in the public school program until all such proceedings

have been completed," unless the parties agree otherwise.  20 U.S.C.A. § 1415(j) (West 2010);

see also 34 C.F.R § 300.518(b) (2010); N.Y. Educ. L. § 4404(4) (McKinney 2010).  C.F. was

applying for initial admission to public school in New York City.  Accordingly, his pendency

placement was the proposed public school program, and Plaintiffs are not entitled to

reimbursement for their decision to leave C.F. at McCarton based merely on the fact that

Plaintiffs rejected the public school placement and unilaterally decided to continue placing C.F.

in private school.  See M.M. ex rel A.M. v. New York City Dep't of Educ., 583 F. Supp. 2d 498,

512 (S.D.N.Y. 2008) ("[T]he fact that the parents withheld consent to placement in the program offered by the public school . . . does not create another option for [reimbursement]." (citing D.P. ex rel. E.P. v. Sch. Bd., 483 F.3d 725, 729-730 (11th Cir.2007)) (internal quotations omitted).

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment denying Plaintiffs' request for reimbursement of the tuition costs incurred in placing C.F. at McCarton is granted.  Plaintiffs' request for attorneys' fees is denied because they have not prevailed in this action.  This Opinion and Order resolves docket entry nos. 12 and 17.  The Clerk of Court is requested to enter judgment in Defendant's favor and to close this case.

SO ORDERED.

Dated: New York, New York
        October 28, 2011

LAURA TAYLOR SWAIN
United States District Judge